IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Platinum Inc, <br><br> Plaintiff, <br><br> v. <br><br> Infinite Transport, LLC, <br><br> Defendant. | Case No. 3:21-cv-50061 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Platinum Inc. brings this action against Infinite Transport, LLC, for breach of contract, equitable accounting, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. Platinum originally filed this action in Illinois state court. Infinite then timely removed to this Court, asserting diversity of citizenship jurisdiction under 28 U.S.C. § 1332. It then filed the present motion to dismiss. For the following reasons, the Court grants in part and denies in part Infinite's motion.

**I. Background**

At this stage in the litigation, all the following information comes from Platinum's state court complaint, which is before this Court on removal. The Court accepts the complaint's allegations as true for the purpose of the motion to dismiss.

In 2016 and 2017, Platinum and Infinite Transport entered into contracts whereby Infinite Transport would act as a freight broker. Infinite negotiated with third parties in need of freight transport services and, under the contracts at issue

1

here, Platinum provided the needed freight transport services. Infinite then documented the amount paid by the third parties on settlement forms. The contract between Infinite and Platinum specified that Infinite kept a ten percent finder's fee for brokering the deal, and Platinum received the remaining ninety percent for providing the actual services.

At some point, Platinum discovered that Infinite was not documenting the correct amount paid on the settlement forms. One of Platinum's employees allegedly observed a computer screen that showed Infinite was paid a higher amount than it told Platinum about. Later, an employee of one of the third parties (a company using the shipping services) confirmed that the third-party company had paid a higher amount than Infinite reported on the settlement form. The day after Platinum's employee uncovered the alleged inaccuracy, he contacted Scott Young, one of Infinite's corporate officers. Young allegedly denied the fraud, explaining that they just write it that way. He reaffirmed Infinite's position that the amount documented on the settlement form was correct. That reaffirmation caused Platinum to continue with the business relationship. But then, Platinum allegedly uncovered further discrepancies after questioning some of Infinite's truck drivers. According to Platinum, the third party's employee that originally confirmed that inaccuracy informed Platinum that Scott Young called the third-party company to complain that Platinum had found out about the discrepancy.

Based on these allegations, Platinum presents three claims. In Count I, Platinum requests an equitable accounting to ascertain the amount owed based on

Infinite's business records. In Count II, Platinum asserts a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. And in Count III, Platinum claims that Infinite breached the contracts that the two companies entered into in 2016 and 2017. The Court addresses each in reverse order.

## II.    Analysis

To defeat a motion to dismiss, the plaintiff must have alleged facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This means that a plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009). The Court accepts as true all the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). The burden of persuasion on a motion to dismiss rests with the defendant. *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008) ("On a motion to dismiss, defendants have the burden of demonstrating the legal insufficiency of the complaint – not the plaintiffs or the court."). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. "But the proper question to ask is still '*could* these things have happened, not *did* they happen.'" *Carlson v. CSX Transp. Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010) (emphasis in original)).

### a. Count III—Breach of Contract

Infinite moves to dismiss Platinum's breach of contract claim. In support, it presents two arguments: (1) Platinum has not pleaded the elements of a breach of contract claim; and (2) it did not breach the contract because it was only required to pay the amount on the settlement forms, regardless of whether that amount was different than the real amount it was paid. Dkt. 11, at 5–8.

The complaint sufficiently states a claim for breach of contract. Infinite points to the familiar elements of a breach of contract claim under Illinois law. The elements are (1) a valid and enforceable contract; (2) the plaintiff performed on the contract, (3) the defendant breached the contract, and (4) the breach resulted in an injury to the plaintiff. *Sherwood Commons Townhome Owners Ass'n v. DuBois*, 2020 IL App. (3d) 180561, ¶ 28.

Infinite argues that this Court should dismiss Platinum's breach of contract claim because it has failed to affirmatively allege every element listed above. Dkt. 11, at 5. That argument is wrong for two reasons. First, the federal pleading standard does not require a plaintiff to plead facts supporting every element of a claim. The Seventh Circuit has consistently held that "it is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). But regardless, Platinum has included allegations that either support each element directly or support each element by reasonable inference.

4

In its state court complaint, Platinum alleged the existence of two contracts, and it attached those contracts. Dkt. 1-2, at 7–17. Infinite contends that Platinum never affirmatively pleaded that it performed its obligations under the contracts. Dkt. 11, at 5. True enough, no allegation explicitly alleges performance, nor is that required. Instead, the Court draws all reasonable inferences in favor of the nonmovant. *Lodholtz v. York Risk Servs. Grp.*, 778 F.3d 635, 639 (7th Cir. 2015). And the allegations in Platinum's complaint are more than enough to supply the reasonable inference that it performed its obligations under the relevant contracts. After all, Platinum alleges that the third-party companies paid Infinite higher rates for transport services than the amount Infinite documented on the settlement forms and that this happened multiple times over the course of their business relationship. This clearly implies that Platinum provided the transport services that the end customer paid for. Before turning to the allegation of breach, the Court notes that Platinum has alleged that the breach cost it in excess of $100,000. Notwithstanding Infinite's argument to the contrary, such an injury more than suffices to allege resultant harm from any breach.

Lastly, Platinum has sufficiently alleged that Infinite breached. The 2016 and 2017 contracts are remarkably similar; they both contain the same language related to fees: "LOAD FINDER will charge and CARRIER will pay for the above transportation service performed on the basis of the rate of Ten percent (10%) of the charges shown on separate Settlement sheet. Payment to LOAD FINDER by CARRIER shall be complete and final without recourse." Dkt. 1-2, at 10, 15.

Infinite contends that the plain language of the contract entitles Platinum to only ten percent of the amount listed on the settlement forms, not ten percent of the amount it received from the third-party customer. In other words, the contract allows Infinite to put whatever number on the settlement form it desires, and Platinum is owed only ninety percent of that number; the accuracy of the documentation notwithstanding. In case the argument was ambiguous, Infinite confirms in reply that "Platinum's interpretation is contrary to the plain and unambiguous language of the Contract, which clearly indicates that Platinum was only entitled to 90% of what was reflected on the Settlement Sheet." Dkt. 18, at 2.

At best, this argument is an exercise in *reductio ad absurdum*. If Infinite's view of the contractual terms were correct, it could receive $1,000,000 from a third-party customer, document only $100,000 dollars received, and then pay Platinum only $90,000 for shipping the goods. And that is a generous scenario given that Infinite's logic would make it legal to document much less on the settlement form and pay Platinum almost nothing. In other words, Infinite's interpretation of the contract clause cannot be correct because its logic leads to a ridiculous conclusion. *Reductio Ad Absurdum*, Black's Law Dictionary (11th ed. 2019) ("In logic, disproof of an argument by showing that it leads to a ridiculous conclusion.").

Furthermore, general principles of contract law explain why Infinite's reading of the contracts cannot be correct. Courts are often guided by the principal purpose of the parties in entering into the contract. 1 Corbin on Illinois Contracts § 24.08. Though the contracts are not lengthy, the clear purpose is to award Infinite a

ten percent finder's fee; namely, ten percent of the amount of the transaction, not ten percent of whatever Infinite decides to represent was the amount of the transaction. And every Illinois contract includes a covenant of good faith and fair dealing. *Kosowksi v. Alberts*, 2017 IL App. (1st) 170622-U, ¶ 52. That covenant serves the purpose of ensuring any discretion in the terms of the contract is not exercised to deprive the other contracting party from realizing its reasonable expectations under the contract. *Id.* ¶ 53. Thus, to the extent that the contractual terms allowed Infinite to exercise discretion in determining what to write on the settlement forms, Infinite was required to exercise that discretion "reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *McCleary v. Wells Fargo Sec. L.L.C.*, 2015 IL App. (1st) 141287, ¶ 19.

At this early stage, the Court deals only in allegations, not facts. But the allegations, taken as true, raise the plausible inference that Infinite breached its contracts with Platinum. That is enough to survive a motion to dismiss.

### b. Count II—Consumer Fraud and Deceptive Business Practices

In Count II, Platinum asserts a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq*. Infinite moves for dismissal of that claim on the theory that "Plaintiff's ICFA claim is merely a breach of contract claim cloaked as a violation of the ICFA." Dkt. 11, at 10. Infinite furthers contends that Platinum lacks standing to bring a claim under the ICFA and that the Federal Aviation Administration Authorization Act of 1994 preempts

the ICFA in this situation. Dkt. 11, at 11–12. Because Infinite is correct that Platinum's ICFA claim cannot co-exist with its breach of contract claim, the Court does not consider Infinite's other arguments.

In *Avery v. State Farm Mut. Auto. Ins. Co.*, the Supreme Court of Illinois held that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." 835 N.E.2d 801, 844 (Ill. 2005). There, the plaintiffs challenged State Farm's practice of installing non-OEM crash parts in customer vehicles, which plaintiffs believed were substandard and violated the promises State Farm made in its contracts to restore vehicles to their pre-loss condition.[1] *Id.* at 836. That fact was not disclosed to the plaintiffs, who believed the value of their cars had been diminished because of the alleged misrepresentation and concealment. *Id.* Though the lower courts had determined otherwise, the *Avery* court reversed: "As a matter of law, plaintiffs' consumer fraud claim may not be based on the assertion that State Farm breached its promise to restore plaintiffs' vehicles to their 'pre-loss condition' or that State Farm breached its promise to repair plaintiffs' vehicles using parts of 'like kind and quality.'" *Id.* at 844.

In *Greenberger v. GEICO Gen. Ins. Co.*, the plaintiff alleged violations of the same Illinois Consumer Fraud Act. 631 F.3d 392, 399 (7th Cir. 2011). Allegedly, "GEICO's damage-estimating software . . . systematically omit[ed] or underestimate[d] the cost of repairs," which Greenberger argued resulted in a failure to restore vehicles to their pre-loss condition. *Id.* But the Seventh Circuit,

---

[1] The court explained that non-OEM crash parts are "aftermarket parts made by companies not affiliated with original equipment manufacturers." *Avery*, 835 N.E.2d at 810–11.

invoking *Avery*, determined that Greenberger's claim was a garden-variety breach of contract claim. Because the circumstances did not present an independent basis for a claim of fraud, apart from the facts giving rise to the breach of contract claim, Greenberger's Illinois Consumer Fraud Act claim could not exist. *Id.* "When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract." *Id.* (further explaining that "[h]ere, as in *Avery*, the consumer-fraud and contract claims rest on the same factual foundation; no distinct deceptive acts are alleged").

Here, *Avery* and *Greenberger* foreclose Platinum's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. Platinum asserts that the distinct deceptive act is "that Defendant communicated an amount other than that which was paid in its Settlement Sheets, and that Plaintiff relied upon that deceptive amount." Dkt. 15, at 6. But the mere fact that the breach of contract contains an element of deception does not distinguish *Avery*. That case also dealt with allegedly deceptive acts because the insurer was using purportedly inferior products and not telling the consumer about it. At bottom, and as explained above, *Avery* instructs that the allegations giving rise to an ICFA claim must be deceptive and distinct from the allegations giving rise to the breach of contract claim. Because Platinum's allegations are not distinct, it fails to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act.

### c. Count I—Accounting

Lastly, in Count I, Platinum asserts a claim for equitable accounting. That claim is only available for plaintiffs that otherwise lack an adequate remedy at law. *Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005). Still, those plaintiffs must additionally show (1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature. *Id.* In *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, the Seventh Circuit held that the district court did not abuse its discretion in allowing for an accounting. 353 F.3d 541, 546 (7th Cir. 2003). There, the court found no adequate legal remedy "because ABM failed to keep records of the royalties owed" and that "by failing to keep accurate records of royalties, ABM engaged in fraud." *Id.*

But in *Kempner*, the Seventh Circuit affirmed the denial of an equitable account because the plaintiff had failed to plead that no adequate remedy existed at law and the case amounted to a garden-variety contract dispute. 428 F.3d at 715. The court continued, "Indeed, damages in this case are not speculative, and the amount of damages is neither difficult nor impossible to measure. Furthermore, all of the accounting information pertinent to Kempner's claims could and should have been revealed through discovery." *Id.*

Here, Platinum has not effectively pleaded that it has no adequate remedy at law. On the contrary, its breach of contract claim is just that. To the extent Platinum needs access to Infinite's business records, it will have the chance to make

10

such requests in discovery. In other words, Platinum has no need for a remedy in equity to gain access to business records showing how much, if anything, it is owed. It already has a mechanism at law to get that information—by using the rules of discovery in its breach of contract claim. Like *Kempner*, Platinum presents a breach of contract claim and offers no reason why that claim is inadequate. It offers no reason why discovery is inadequate or why the damages calculation is overly complex. Instead, Platinum pleads a relatively specific amount of $108,000.

Quoting *3Com Corporation v. Electrical Recovery Specialists, Inc.*, 104 F. Supp. 2d 932 (N.D. Ill. 2000), Platinum argues that the existence of a fiduciary relationship creates an exception to the rule that a plaintiff must plead the absence of an adequate remedy at law. Dkt. 15, at 5. That case does indeed explain that a fiduciary relationship can in some circumstances offer an exception to the general rule. But there, the district court further explained that a contractual relationship does not create a fiduciary relationship, and both parties were sophisticated businesses "accustomed to contractual relationships." *3Com*, 104 F. Supp. 2d at 941–42. The same is true here. The parties are not consumers, they are commercial businesses that agreed to a contract. And "mere allegations that one business simply trusted another to fulfill [its] contractual obligations is certainly not enough." *Id.* (quoting *Carey Elec. Contracting, Inc. v. First Nat'l Bank of Elgin*, 392 N.E.2d 759, 763 (Ill App. Ct. 1979)). Thus, the Court grants Infinite's motion to dismiss Platinum's accounting claim.

### III.   Conclusion

For the reasons explained above, Infinite's motion to dismiss [11] is granted in part and denied in part. Although Platinum's breach of contract claim survives, the Court dismisses Platinum's claim for equitable accounting and its claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, both without prejudice.

Date:  July 19, 2021

_____
Honorable Iain D. Johnston
United States District Judge
Northern District of Illinois
Western Division
